### SALLIE B. COTTON, ET AL., *v.* GEORGE WOLFE.
### KATIE B. COTTON'S ADM'R *v.* SAME.

**Guardian's Expenditures.**
> A guardian may not legally expend for his wards more than the
> income from their estate without first procuring from the court au-
> thority to do so.

**Compensation of Guardian.**
> A guardian, or one assuming to be one, who has charge of his ward's
> estate, where he is guilty of gross mismanagement and conversion, is
> not entitled to any compensation for his services as such trustee.

### APPEAL FROM LOUISVILLE CHANCERY COURT.
#### December 6, 1879.

OPINION BY JUDGE PRYOR:

This judgment must be reversed. Cotton, after his attempted
qualification as guardian, which was on the 2d day of July, 1868,
received of the estate of his wards $3,777.84 on a note on Mrs. Sew-
ell. He sold the bank stock, 14 shares for $1,119, and received the
proceeds of the Missouri land, $845, making in all the sum of
$5,742.82. This must be regarded as the principal of the ward's es-
tate upon which he should be charged interest. He took charge of
that estate in good faith, but has so managed the property of these
infants as to involve them in litigation, causing them to suffer great
pecuniary loss, and therefore no allowance should have been made
him for his services, nor credits given for making the settlements
that the children are now attacking. The necessary expense incurred
by these children in getting what is left of their estate will greatly
exceed the claim allowed the surety in this case, in right of his prin-
cipal, and that, too, when the principal is largely indebted to the
children.

No such recusant fiduciary, if guardian in fact, would be allowed
compensation under such circumstances. Both the allowance and
the costs of this attempted qualification should have been refused as
a credit. Nor should he at any time or for any period have been al-
lowed any greater credit for expenditures than the income of the
estate. How much of the income he should have been allowed to
expend is a question this court must decide from the facts before us.
So far as appears from the record all the property the children had,
out of which anything could be realized, was the amount of moneys

received by Cotton after the execution of his bond and the rent of the real estate. While Cotton qualified in good faith, he was converting the estate of the infants to his own use from the moment he executed his bond.

What the vast expenditures made by the guardian consisted in does not appear, but in no event should the chancellor have permitted the real guardian to expend exceeding $1,000 per annum for the support, education and maintenance of these three children. Their estate was small, and they should have been educated and clothed according to their circumstances in life. He credits these children with rent for the years 1868, 1869, 1870, 1871, 1872 and 1873, for a sum more than sufficient each year to educate and maintain them. Their expenses were decreased during the latter period of Cotton's administration, by the death of the oldest of the sisters, and yet, from the record before us, the rents are gone, the interest expended, and the principal encroached on until it is reduced to near $1,500. Their income was more than ample to support them, and when Cotton had no legal right to interfere with either the principal or income, the chancellor finds himself searching for an equity to allow any credit for expenditures made, and particularly when Cotton was indebted largely to the wards, and for which he had not accounted when these expenditures were made, and still owes the debt. This is the troublesome question in the case, and to allow the expenditures is to regard him as a trustee by reason of his having acquired control of the funds in good faith, and to limit the liability of the surety on that ground. These expenditures this court will presume were made out of the trust fund. This alone distinguishes this case from the recognized rule that the law will apply the credit where there is more than one debt owing to the same party to the one most precariously situated. The children were also improperly charged with the taxes on the whole estate owned by themselves and their mother. It may be that Cotton withheld what was going to Mrs. Sewell, but if he did the children never derived any benefit from it. They are liable for only their part of the tax, and no more.

The money realized by Mrs. Sewell on the sale of the organ and mortgaged property, and applied to her individual debt, should not have been charged to the children. Mrs. Sewell may not have been entitled to it, but this affords no reason why the children should be charged with it when it was applied to her individual debt under an attachment in her name and for her debt. Neither the amount of

money, $4,297.74, owing by Cotton prior and at the time of his qualification, nor the interest thereon, is not to be computed in making this settlement.

The provisions of the General Statutes with reference to guardians has no application to this case. Cotton was not guardian, but a voluntary trustee, and certainly had no right to expend any part of the principal of the children's estate without asking the chancellor. Upon such an income as is shown in this case a prudent and economical guardian would accumulate or add to the principal of the wards' estate, instead of diminishing it. The surety should be charged with interest at 6 per cent. upon the principal sum, as originally reported by the commissioner, and credited by the amounts expended at the time of payment. As no allowance has been made, interest will not be compounded.

The judgment is *reversed* on both appeals and cause remanded for further proceedings, etc.

*Emmet Field, for appellants.*

*Ed Badger, Bigger & Davis, W. Weh Webb, for appellee.*